# DECLARATION OF ANNIE LEGOMSKY, JD/MSW

I, Annie Legomsky, pursuant to 28 U.S.C. § 1746, declare as follows:

1.　　I am an attorney with the Missouri State Public Defender (MSPD). My title is Director of Client Advocacy. In that capacity, I oversee the operation of MSPD's holistic defense services. I am over the age of 18 and of sound mind. The statements set forth in this declaration are true and correct to the best of my knowledge and belief.

2.　　Many current MSPD clients have suspected or confirmed competency issues, which courts address through the process set forth in Mo. Rev. Stat. § 552.020, *et seq.* In cases where a criminal defendant's competency is in question, the circuit court will order the Department of Mental Health ("DMH") to evaluate the individual for competency.

3.　　The majority of these individuals have serious mental illness, including but not limited to schizophrenia and bipolar disorder. Many of them experience housing insecurity or are unhoused.

4.　　Over the last several years, we have seen the wait times for competency evaluations and for restoration treatment increase. As of the date of this affidavit, individuals wait on average approximately six months for a competency evaluation. During this time, these individuals' cases are unable to move forward.  The vast majority of these individuals are detained in jail while waiting for their evaluations.

5.　　If found incompetent to stand trial, the case is suspended and the criminal defendant will wait even longer before DMH provides the court-ordered treatment. Again, the vast majority of these individuals remain in jail waiting for treatment.  On average, a defendant in jail will wait for 14 months to be brought to DMH for treatment. MSPD has had several clients who have waited in jail longer than the maximum range of punishment would be if they were convicted, before receiving restoration treatment.

6. I have observed or am directly aware of MSPD clients whose mental health has deteriorated or decompensated while detained on a DMH waitlist. This includes seeing clients become nonverbal, catatonic, regularly eating their feces, peeling and picking their skin off, pulling out their fingernails and toenails, increased suicidal ideation, and increased suffering from worsened delusions and psychological torment.

7. This decompensation is not surprising because jails are not therapeutic environments, and they are often unable to provide the medical and mental health care that these individuals need. For example, few jails employ full-time mental health staff and as a general matter jails cannot forcibly medicate someone in their custody. In addition, individuals with serious mental illness must be housed in single person cells and are often intentionally isolated from other detainees. While this is done for safety reasons, such isolation exacerbates mental illness.

8. Multiple criminal defendants have died in custody while waiting for DMH treatment. For example, 64-year-old Timothy Beckmann died in the Jackson County Detention Center in May 2025, after waiting months for DMH to provide restoration treatment. He had been arrested after allegedly breaking a glass door of a home and entering, looking for food. At the time, he had been released from a mental health facility and was left unhoused in Kansas City, where he is not from and has no family. Once in jail, Mr. Beckmann's condition started deteriorating to the point where he was engaging in self-harm, pulling out his toenails, scratching himself, and losing touch with reality. At one point, Mr. Beckmann stopped eating or taking his blood pressure medication. At the time of his death, Mr. Beckmann was number 109 on the waiting list for admission to a DMH facility.

9.      This problem is not geographically isolated. Individuals on the DMH waitlist are housed in jails all around the state of Missouri.

10.      MSPD attorneys have attempted to address the issue of unconstitutional delay in the provision of DMH services in criminal defendants' individual cases, but with no success.

11.      DMH has established "jail-based competency restoration" programs in four Missouri jails. However, these programs do not provide adequate competency restoration services. While criminal defendants held in a jail-based restoration program are able to meet with a mental healthcare provider, they receive little to no restoration services beyond medication. Moreover, the medication that can be provided in a jail setting is limited compared to the medications available in DMH hospitals.  For example, some medications require frequent lab work and monitoring, which are not available in most jails.

12.      DMH also deploys mobile teams, which provide medication consultation and management for people on the waitlist. The mobile teams, however, do not provide constitutionally adequate restoration treatment.

13.      Approximately 70% of those on the waitlist are charged with low-level, non-dangerous offenses, and could be treated on an outpatient basis. Yet, to date, there have been fewer than a dozen people ordered into community-based treatment options.

14.      In cases where defense attorneys suspect a criminal defendant might be incompetent, DMH's use of waitlists, and the threat prolonged isolation and detention poses to people on the waitlist, puts defense attorneys in an extremely difficult position of requesting a competency evaluation knowing it will prolong the individual's detention and likely exacerbate their mental illness. This tension is even more pronounced in cases where a defense attorney

knows that a client will spend more time incarcerated on a DMH waitlist than they could be sentenced to serve if convicted.

15. In other cases, MSPD has retained private professionals at our own cost to conduct competency evaluations to avoid this delay. While this short-term solution addresses some of the problem (i.e., delay in administering competency evaluations), it does nothing to address the larger issue of people assessed to be incompetent and languishing in jail for an unreasonable amount of time without receiving treatment from DMH.

I declare under penalty of perjury that this declaration is true and correct.


Date: _11/23/25_          By: _____
                               Annie Legomsky