# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | | |
|---|---|---|
| DEBRA DARRINGTON, as next friend for M.R., et al., on behalf of themselves and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 2:25-cv-04268-MDH |
| | ) | |
| vs. | ) | |
| | ) | |
| MISSOURI DEPARTMENT OF MENTAL HEALTH, et al. | ) ) | |
| | ) | |
| Defendants. | | |

## ORDER

Before the Court is Plaintiffs' Motion for Class Certification pursuant to Fed. Rul. Civ. P. 23. (Doc. 5). Defendants have filed an opposition to the motion and it is now ripe for review. Plaintiffs also have a pending Motion for Preliminary Injunction. (Doc. 62). The Motion for Preliminary Injunction will be addressed in a subsequent order, after an evidentiary hearing. For the reasons set forth herein, the Motion for Class Certification is **GRANTED in part and DENIED in part.**

## BACKGROUND

Defendant Missouri Department of Mental Health ("DMH") is charged with providing competency evaluation and restoration services to individuals charged with a crime in Missouri. The Mental Health Commission is charged with advising the Director of DMH on all phases of department practices to achieve compatibility with professional standards. Plaintiffs' class action lawsuit against all Defendants alleges DMH has been systemically failing to provide Constitutionally timely evaluations and restoration services to pretrial detainees who are suspected of, or adjudicated to be, incompetent to stand trial.

1

Due process requires that a criminal defendant be competent to stand trial:

> No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or her or to assist in his or her own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures.

Mo. Rev. Stat. § 552.020.5

Chapter 552 of the Missouri statute describes the process that courts must follow to determine whether a criminal defendant (the "defendant") lacks mental capacity to stand trial. This process mirrors the federal statutory scheme for defendants who may lack capacity to stand trial. *State v. Tilden*, 988 S.W.2d 568, 573 (Mo. Ct. App. 1999) ("Only a slight difference exists between our statute and the federal law. Federal law demands an exam if there is reasonable cause for the court to believe the defendant 'may presently be suffering,' as compared to Missouri's language of, 'whenever any judge has reasonable cause to believe the accused lacks mental fitness to proceed.'"); see generally, 18 U.S.C. § 4241.

Missouri's process starts with a court ordered competency evaluation by DMH staff. Mo. Rev. Stat. § 552.020.1. Missouri law requires examination reports to be filed within 60 days. If the court determines that the defendant "lacks mental fitness to proceed," the criminal proceedings are suspended, and the court must commit the defendant to the director of the DHM. Mo. Rev. Stat. § 552.020.10. Section 552.020.10 requires the DMH Director or their designee to notify the court and the parties of the location and conditions for treatment. *Id*. Subsequent reports are due every 6 months thereafter. Mo. Rev. Stat. § 552.020.12(1). Where the accused is found to be permanently incompetent to stand trial ("PIST"), there are concurrent proceedings to determine if they should be involuntarily detained (i.e., civilly committed) or have a guardian appointed. Mo. Rev. Stat. § 552.020.12(6). In those cases, the criminal charges are dismissed without prejudice. *Id*.

This lawsuit seeks declaratory and injunctive relief on behalf of two classes of individuals:

2

**Evaluation Class**

> All people who are now, or will be in the future, charged with a crime in Missouri state court and for whom a court has ordered or granted a request for a competency evaluation and who are: (a) currently detained in a county or city jail or similar facility, and (b) placed on a waitlist for competency evaluation services by DMH but who have not received evaluation services within a constitutionally-acceptable time; and

**Restoration Class**

> All people who are now, or will be in the future, charged with a crime in Missouri state court and are: (a) declared not competent to proceed to trial by the state court; (b) currently detained in a county or city jail or similar facility; (c) court-ordered to receive restoration services by DMH; and (d) awaiting, beyond a constitutionally acceptable time, court-ordered competency restoration services to be provided by DMH or its designees.

The Court will evaluate whether Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23(a) and (b)(1)(A), (2).

## STANDARD

Pursuant to Fed. R. Civ. P. 23 "[t]o be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016); citing *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). Plaintiff has the burden of establishing that the class should be certified and that the Rule 23 requirements have been met. *Id.*; citing *Luiken v. Domino's Pizza, LLC.*, 705 F.3d 370, 372 (8th Cir. 2013). The Court has broad discretion in determining whether class certification is appropriate. *Id.* (internal citations omitted). Pursuant to Rule 23(a) a court may "certify a class only if it is satisfied, after a rigorous analysis, that the four threshold requirements are met: numerosity of plaintiffs, commonality of legal or factual questions, typicality of the named plaintiff's claims or defenses, and adequacy of representation by class counsel." *Id.* (internal citations and quotations omitted).

3

If these threshold requirements are met, Plaintiffs must then establish that the class meets one of the three class actions identified in Rule 23(b). *Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1029 (8th Cir. 2010). Plaintiffs seek to certify the class under Federal Rule of Civil Procedure 23(b)(1)(A), (2). These provisions allow certification for a class if (1) individual actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or (2) the party opposing the class acted on grounds that apply generally to the class. Fed. R. Civ. P. 23(b)(1)(A), (2).

**DISCUSSION**

**I.      Rule 23(a) Requirements**

Rule 23(a) requires a party seeking to maintain a class action to affirmatively demonstrate numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The moving party must do more than plead these requirements; he must be prepared to present evidentiary proof to show these requirements are, in fact, satisfied. *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *3 (W.D. Mo. June 11, 2015); *see also Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

**A. Numerosity**

Plaintiffs argue the requirement of numerosity is easily satisfied because hundreds of people remain in county jails on a waitlist for evaluation and/or restoration services well beyond Missouri's statutory requirement and constitutionally permissible limits. Defendants argue that

4

because Plaintiffs' putative class definitions are neither adequately defined nor clearly ascertainable and that Plaintiffs failed to and cannot satisfy the evidentiary requirements of Rule 23(a) at this stage in the proceedings, this Court cannot conduct the rigorous analysis required. The Court disagrees.

"One or more members of a class may sue or be sued as representative parties on behalf of all members only if the class is so numerous that joinder of all members is impracticable". Fed. R. Civ. P. 23(a)(1). In assessing numerosity, courts consider the number of class members as well as "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Hammer v. JP's Sw. Foods, L.L.C.*, 267 F.R.D. 284, 287 (W.D. Mo. 2010) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982)).

The Court finds the proposed class satisfies the numerosity requirement. The Evaluation Class is comprised of over 200 individuals, all of whom remain waiting for an evaluation by DMH beyond the state statutory requirement. The Restoration Class is comprised of hundreds more individuals who have been waiting for restoration services to begin. According to DMH's own data, the number of people detained in jail and awaiting competency restoration treatment has steadily climbed over the last two years, reaching 444 in June 2025. Given the nature of the action and the inconvenience of trying individual suits the Court finds that the proposed class is so numerous that joinder of all members is impracticable. For the reasons stated, the proposed class satisfies the numerosity requirement as reflected in Federal Rule of Civil Procedure 23(a)(1).

**B. Commonality**

In support of the commonality requirement, Plaintiffs suggest the following common question of law or fact are common for all members of the proposed class:

1. Whether Defendants' practice of failing to provide court-ordered evaluations in a timely manner violates the substantive due process rights of individuals with serious mental illness suspected to be incompetent to stand trial;
2. Whether Defendants' practice of housing individuals who have been deemed incompetent to stand trial in county jails and putting them on a lengthy waitlist to receive restoration treatment in a timely manner violates their substantive due process rights;
3. Whether Defendants have failed to provide competency restoration treatment to Plaintiffs and members of the Restoration Class, either at DMH or through third-party designees, within a reasonable period of time;
4. Whether and to what extent prolonged periods of confinement in county jails or similar detention facilities while awaiting restorative services causes or exacerbates mental, emotional and physical harm to the Class members;
5. The average period of delay caused or permitted by Defendants in the delivery of evaluation services to Evaluation Class members, and the reasons therefore;
6. The average period of delay caused or permitted by Defendants in the delivery of restoration services to Restoration Class members, and the reasons therefore;
7. Whether Defendants' failure to provide integrated community-based restoration treatment to Restoration Class members when a bed at a DMH facility is not available, violates Title II of the Americans with Disabilities Act; and
8. Whether Defendants have designated third parties to provide in-jail restorative services and, if so, whether such services are being provided to the entire Class, and whether such third-party designations and services comply with Missouri law, applicable professional standards of care, and constitutional standards.

Defendants argue that without evidentiary support for their claims, Plaintiffs cannot establish a commonality among putative class members. Defendants argue the eight questions of law or fact all assume that timely services are not being rendered. Further they argue that without further discovery of the timeline in which they receive services, a determination on the

6

commonality, as well as all other requirements of Rule 23(a), cannot be placed under the analysis requirement of Rule 23(a).[1]

Rule 23(a)(2) first requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). How one articulates the claims in any given case could artfully carry the day on the issue of commonality, "since '[a]ny competently crafted class complaint literally raises common "questions.' " " *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) Indeed, "even a single common question will do," provided there are not "[d]issimilarities within the proposed class" that "have the potential to impede the generation of common answers." *Wal-Mart*, 564 U.S. at 359, 351 (citations and alterations omitted).

The named pretrial detainees have raised claims on behalf of both classes: whether the DMH's failure to provide inpatient mental-health services to the class as ordered by state courts pursuant to statutes in a timely manner, combined with the class members' detention in a jail or prison, violates their rights under the Due Process Clause of the Fourteenth Amendment.

Moreover, class members are detained in various city and county jails spread throughout Missouri and therefore experience the harm—the delayed start of evaluations and inpatient mental-health restoration—in different settings. However, the commonality requirement may be satisfied "even if some factual differences concerning treatment" are present. *In re Checking Account Overdraft Litigation*, 307 F.R.D. 656, 668 (S.D. Fla. 2015) (King, J.); *see also Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (Fact that many variations of remedy existed for each

---

[1] While Defendants indicate additional discovery is necessary to make a Rule 23(a) determination, a review of the docket indicates Defendants were served 12/1/2025, filed a response as a Motion to Dismiss on 12/31/2025, a protective order was entered 3/5/2026 along with a scheduling order. As of the date of this Order, nothing on the docket reflects any attempt by Defendants to conduct discovery. Further, it appears to the Court that Defendants have superior access to information concerning its own waitlists than Plaintiffs could possess. The information Plaintiffs provided concerning waitlists comes primarily from public presentations from Defendants own executives.

individual inmate of Arkansas state mental hospital not fatal to maintenance of a class action challenging procedures for commitment to and release from that facility because common questions of law existed).

Despite these factual distinctions, a classwide proceeding would have "generate[d] common *answers* apt to drive the resolution of the litigation," *Wal-Mart*, 564 U.S. at 350 (citation and internal quotation marks omitted); principally, the proceeding would have answered the factual questions of whether the DMH has failed to provide court-ordered inpatient mental-health services to detainees committed to its custody for that purpose in a constitutionally permissible period of time; and, if so, it would resolve the sole legal question, namely whether that failure violates class members' due-process rights.

While the proposed class members may be suspected of different crimes and may have different underlying mental illnesses, all have been arrested, are sitting in jail, face questions about their capacity, have been ordered by a court to be evaluated, and have been waiting for evaluation to begin for a period of time in excess of the 60-day period provided by Missouri law. Their common circumstances are far more relevant to the Constitutional Due Process analysis than any differences among class members.

Those who have been ordered to receive restoration services similarly face common situations – they are in jail, their capacity evaluation has identified the need for restoration services, which have been ordered, but they remain in jail for an extended period of time in excess of the 6-month reporting period provided by Missouri law waiting for their services to even begin.

Here, the Court finds the proposed classes satisfy the commonality requirement. Any person charged with a crime and ordered by a circuit court to be evaluated for competency or to receive competency restoration services confronts Defendants' same policy for placement on a

8

waitlist for services and being held in jail well in excess of the limit established by state law and prior to any services even being initiated. For the reasons stated, the proposed classes satisfy the commonality requirement in Federal Rule of Civil Procedure 23(a)(2).

### C. Typicality

Plaintiffs argue that the typicality requirement is satisfied because the named Plaintiffs' claims and those of the proposed classes arise from the same course of conduct: DMH's failure to provide timely competency services as required under due process and Missouri statute.

"One or more members of a class may sue or be sued as representative parties on behalf of all members only if the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The class representatives "need not share identical interests with every class member, but only 'common objectives and legal and factual positions.'" *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *3 (W.D. Mo. June 11, 2015) (quoting *In re Uponor, Inc.*, F1807 Plumbing Fittings Products Liab. Litig., 716 F.3d 1057, 1064 (8th Cir. 2013)). The typicality requirement is "fairly easily met" and it is considered satisfied where "the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Lane v. Lombardi*, No. 2:12-CV-4219-NKL, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012) (quoting *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561–62 (8th Cir. 1982)).

Plaintiffs M.R., K.M., M.T., O.J., and C.T. all have been found to be incompetent to stand trial and have each spent over a year detained and waiting for DMH to provide court-ordered treatment. Plaintiffs have shown this experience is typical of the proposed Restoration Class. Class members wait on average 14 months between being found IST and receiving treatment. This delay

is excessive, bears no reasonable relation to the purpose of restoring Plaintiffs' competency, and is unconstitutional. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

Similarly, Plaintiff D.W.'s experience is typical of someone awaiting a competency assessment in Missouri. He has been detained for 183 days. Under Missouri law, the examination report must be filed within 60 days. Mo. Rev. Stat. § 552.020.3. However, D.W. waits behind over 200 other proposed class members who are also waiting for DMH to assess their competency to stand trial. And, Plaintiffs allege, on average, Evaluation Class members wait six months for a competency evaluation.

Plaintiffs have satisfied the typicality requirement. Plaintiffs M.R., K.M., M.T., O.J., C.T., and D.W. have plausibly demonstrated that the injustices they have experienced, like the injury inflicted and to-be-inflicted on other class members, stem directly from Defendants' policies, practices, and customs regarding the provision of competency services. These claims are the same as those that could be raised by any member of the proposed Evaluation or Restoration Classes, and all members of both classes share a common injury: experiencing an unreasonable delay in the provision of competency services by DMH. The Court is satisfied that Plaintiffs meets the typicality requirements in this case. For the reasons stated, the proposed classes meet the typicality requirements of in Federal Rule of Civil Procedure 23(a)(3).

### D. Adequacy of Representation

Plaintiffs are represented by qualified, experienced, and well-resourced counsel in the present case. Undersigned Counsel have significant litigation experience in state and federal courts, including as class counsel in pending civil rights actions seeking prospective relief. In addition, the named Plaintiffs' interests are not antagonistic to those of the proposed classes.

Plaintiffs and fellow class members seek timely access to court-ordered treatment within the DMH. The proposed class representatives in this case are committed to protecting not only their own rights, but the rights of all absent class members.

"One or more members of a class may sue or be sued as representative parties on behalf of all members only if the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is a twofold requirement–"(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Lane v. Lombardi*, No. 2:12-CV-4219-NKL, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012) (quoting *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978)).

The proposed class representatives have demonstrated they are committed to protecting not only their own rights, but the rights of all absent class members. For the reasons stated, the proposed classes meet the requirements of Federal Rule of Civil Procedure 23(a)(4). Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23(a).

## II.     Rule 23(b) Requirements

In addition to the requirements under Rule 23(a), a party seeking to certify a class must also satisfy, through evidentiary proof, at least one provision of Rule 23(b). Fed. R. Civ. P. 23(b); *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). Here, Plaintiffs seek to certify the classes under Federal Rule of Civil Procedure 23(b)(1)(A), (2). These provisions allow certification for a class if (1) individual actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the

party opposing the class, or (2) the party opposing the class acted on grounds that apply generally to the class. Fed. R. Civ. P. 23(b)(1)(A), (2).

### A. Rule 23(b)(1)(A)

Rule 23(b)(1)(A) allows for certification of a class when not doing so would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).

Both proposed classes are entitled to the same level of due process in competency proceedings—with respect to both the evaluation and the treatment aspects. Litigating class members' claims individually would present a risk of varying outcomes in what due process requires, when the same standards should apply to all competency proceedings for all indigent criminal defendants with serious mental illness. Class certification pursuant to subpart (b)(1)(A) is appropriate.

### B. Rule 23(b)(2)

Rule 23(b)(2) allows for certification of a class when the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

As Plaintiffs have explained, the problems of which they complain reflect a *systemic* failure. DMH's practice of failing to provide timely inpatient admissions to criminal defendants in Missouri awaiting court-ordered competency examinations and competency restoration treatment

12

affects all members of both classes. Moreover, the Plaintiffs seek a transformation of that system, such as through increased bed capacity to enable more prompt admissions. Class certification pursuant to subpart (b)(2) is appropriate.

## III. Revised Definitions

Defendants argue that the proposed definitions, as currently proposed, require a decision on the merits. Plaintiffs ask this Court to revise the definitions of the class rather than deny certification. Plaintiffs suggest striking the constitutional language, as follows:

> All people who are now, or will be in the future, charged with a crime in Missouri state court and are: (a) declared not competent to proceed to trial by the state court; (b) currently detained in a county or city jail or similar facility; (c) court-ordered to receive restoration services by DMH; and (d) awaiting, ~~beyond a constitutionally acceptable time~~, court-ordered competency restoration services to be provided by DMH or its designees (the "Restoration Class").

and

> All people who are now, or will be in the future, charged with a crime in Missouri state court and for whom a court has ordered or granted a request for a competency evaluation and who are: (a) currently detained in a county or city jail or similar facility, and (b) placed on a waitlist for competency evaluation services by DMH but ~~who have not received evaluation services within a constitutionally acceptable time~~ (the "Evaluation Class").

In the Eastern District of Arkansas, a similar definition was certified in a case filed to cure constitutional deficiencies. The class was defined as follows:

> All persons charged with or under indictment for various criminal offenses who are suffering from mental illness, are confined as inmates in detention facilities in Arkansas, and who either have been ordered by the circuit courts in the counties where charges are pending to undergo an inpatient forensic mental evaluation at the Arkansas State Hospital or ordered by a court to be committed to the Arkansas State Hospital for treatment.

*Terry ex rel. Terry v. Hill*, 232 F. Supp. 2d 934, 935 (E.D. Ark. 2002).

Therefore, the Court Orders the following classes be certified:

13

All people who are now, or will be in the future, charged with a crime in Missouri state court and are: (a) declared not competent to proceed to trial by the state court; (b) currently detained in a county or city jail or similar facility; (c) court-ordered to receive restoration services by DMH; and (d) awaiting court-ordered competency restoration services to be provided by DMH or its designees for more than 90 days beyond the Restoration order of the circuit court (the "Restoration Class").

and

All people who are now, or will be in the future, charged with a crime in Missouri state court and for whom a court has ordered a competency evaluation and who are: (a) currently detained in a county or city jail or similar facility, and (b) placed on a waitlist for competency evaluation services by DMH and (c) awaiting restoration services for more than 90 days beyond an order of the circuit court (the "Evaluation Class").

The Court has adopted the 90-day period in the class definition because it is 150% of the state statutorily adopted limit for completion of the evaluation period. Class members will have not even started an Evaluation or Restoration Service within 150% of the time period. The Court would also note a person accused of a crime is typically entitled to speedy trial within 70 days of indictment or arraignment albeit excluding competency evaluation period. *United States v. DeGarmo*, 450 F.3d 360, 362–63 (8th Cir.2006); see also 18 U.S.C. § 3161(c)(1). While this limit has not been previously adopted as a rigid Due Process standard or a 6th Amendment speedy trial requirement, it seems obvious that the 90-day period is a reasonable, if not minimal, constitutional standard for competency evaluation and restoration services to have at least started for a jailed pretrial detainee.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Class Certification (Doc. 5) is **GRANTED** in part and **DENIED** in part.

1. The Court certifies the following classes:

14

All people who are now, or will be in the future, charged with a crime in Missouri state court and are: (a) declared not competent to proceed to trial by the state court; (b) currently detained in a county or city jail or similar facility; (c) court-ordered to receive restoration services by DMH; and (d) awaiting court-ordered competency restoration services to be provided by DMH or its designees for more than 90 days beyond the Restoration order of the circuit court (the "Restoration Class").

and

All people who are now, or will be in the future, charged with a crime in Missouri state court and for whom a court has ordered a competency evaluation and who are: (a) currently detained in a county or city jail or similar facility, and (b) placed on a waitlist for competency evaluation services by DMH and (c) awaiting restoration services for more than 90 days beyond an order of the circuit court (the "Evaluation Class").

2. The Court appoints Plaintiffs M.R., K.M., M.T., O.J., and C.T. as class representatives for the "Restoration Class."

3. The Court appoints Plaintiff D.W. as class representative for the "Evaluation Class."

4. The Court appoints undersigned counsel as class counsel.

5. Within 10 days from the date of this Order, the parties shall file a joint proposed amended scheduling order and proposed dates for a preliminary injunction to take place within the next 60 days.

**IT IS SO ORDERED**.

DATED: June 16, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**