**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| DEBRA DARRINGTON, as next friend for M.R., et al., *on behalf of themselves and others similarly situated,* | ) | |
| Plaintiffs, | ) | Case No. 2:25-cv-04268-MDH |
| v. | ) | |
| MISSOURI DEPARTMENT OF MENTAL HEALTH, et al., | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO STAY ALL PROCEEDINGS**

Come now, Plaintiffs Debra Darrington, as next friend for M.R.; Eric Massey, as next friend for K.M.; Anita Tabb as next friend for M.T.; Veda Johnson as next friend for O.J.; Carrie Miner as next friend for C.T.; and Delicia Walker as next friend for D.W., and respectfully submit the following suggestions in opposition to Defendants' motion to stay all proceedings:

## INTRODUCTION

This matter comes before the Court because Defendants again seek to pause this litigation in full, particularly to avoid discovery. Plaintiffs posit that discovery should proceed while the Eighth Circuit considers this Court's order granting certification of Plaintiffs' Restoration Class.

Defendants' refusal to meaningfully engage in discovery makes clear that the agency would rather eschew transparency than provide pretrial detainees with constitutionally appropriate mental health services. Unfortunately for Defendants, it is their responsibility to provide these services and to participate in discovery when sued because they have failed to adequately provide such services. Defendants should not be permitted to evade discovery which will advance this

litigation while Plaintiffs and other similarly situated individuals are subjected to daily harm awaiting the treatment the Constitution and the Americans with Disabilities Act affords them.

Defendants openly suggest that they cannot make any changes to the broken system that they control and refuse to participate in discovery presumably because they are unable to manage the challenges they have created. (Doc. 153 at 5) ("Plaintiffs are not seeking relief that could possibly be implemented on a short-term basis, but rather they are seeking long-term systemic changes that will take years to implement."). In litigation, discovery is necessary to determine what specific relief is needed and how to implement it on a short-term or long-term basis. Defendants do not have the right to mandate how and when they deem it appropriate to resolve their violations of Plaintiffs' constitutional rights. And Defendants' belief that any solution will take "years to implement" is all the more reason to allow Plaintiffs to learn more about the system, who it impacts and how, and what solutions might be available. If Defendants were serious about addressing these systemic issues, they would welcome a collaborative discovery process rather than stonewalling Plaintiffs at every turn.

This Court should deny Defendants' Motion to Stay All Proceedings and, at a minimum, allow discovery to proceed while the Eighth Circuit considers Defendants' Rule 23(f) appeal. Plaintiffs do not oppose a stay of other case management deadlines—such as: expert disclosures, the close of discovery and discovery motions, *Daubert* motions, and dispositive motions—but would prefer to move forward with discovery about the system that impacts the named Plaintiffs regardless of the class certification.

## LEGAL STANDARD

An appeal under Federal Rule of Civil Procedure 23(f) "does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f). In

fact, one key purpose of Rule 23(f) not resulting in an automatic stay is to avoid unnecessary delay. *Microsoft Corp. v. Baker*, 582 U.S. 23, 38 n.9 (2017). "As the rule makes clear, a stay of proceedings pending an appeal from an order granting class certification is an ***exception*** to the general rule that the district court proceedings ordinarily continue pending an appeal of certification." *In re Wholesale Grocery Prod. Antitrust Litig.*, No. 09-MD-2090 ADM/TNL, 2016 WL 6246758, at *1 (D. Minn. Oct. 25, 2016) (emphasis added). Rule 23(f) was drafted with the understanding "that in most cases discovery (at the very least, merits discovery) will continue notwithstanding the pendency of an appeal of the class certification order." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 n.8 (11th Cir. 2000).

When considering the appropriateness of a stay pursuant to a Rule 23(f) appeal, district courts within this Circuit look to *Brady v. National Football League*, 640 F.3d 785, 789 (8th Cir. 2011). *Brady* provides a four-factor test. Under this test, the party seeking the stay bears the burden of demonstrating: (1) it is likely to succeed on the merits of its appeal; (2) it will be irreparably injured unless the stay is granted; (3) granting the stay will not substantially injure the non-moving party; and (4) the public interest will not be harmed by granting the stay. *Brady*, 640 F.3d at 789; *see also*, *M.B. v. Corsi*, No. 2:17-CV-04102-NKL, 2018 WL 5504178, at *2 (W.D. Mo. Oct. 29, 2018) (applying the *Brady* factors and denying defendants' motion to stay proceedings in the district court despite the fact that the Eighth Circuit granted defendants' petition for 23(f) appeal); *McAllister v. St. Louis Rams*, LLC, No. 4:16-CV-172 SNLJ, 2018 WL 2180247, at *1 (E.D. Mo. Apr. 9, 2018) (applying the *Brady* factors when considering a stay under Rule 23(f)); *Boswell v. Panera Bread Co.*, No. 4:14-CV-01833-AGF, 2015 WL 10662912, at *1 (E.D. Mo. Dec. 1, 2015) (same); *Perrin v. Papa Johns Int'l, Inc., No*. 4:09CV01335 AGF, 2014 WL 306250, at *2 (E.D. Mo. Jan. 28, 2014 (same); *Mayo v. UBS Real Est. Sec., Inc.*, No. 08-00568-CV-W-DGK, 2011

WL 3109786, at *1 (W.D. Mo. July 26, 2011) (same). While "the most important factor is the appellant's likelihood of success on the merits," ultimately, courts "must consider the relative strength of the four factors," and "balance them all." *Brady*, 640 F.3d at 789. Importantly, "[t]he Eighth Circuit's grant of leave to appeal from the class certification order suggests that Defendants have a *possibility* of succeeding on the appeal, but it does not make success likely." *M.B.*, 2018 WL 5504178, at *3.

## ARGUMENT

Defendants have not met their burden. Plaintiffs and class members face irreparable physical and mental harm every single day Defendants neglect to provide them with necessary mental health care. Defendants fail entirely to argue they will succeed on the merits in their appeal and have not established that they face threat of any injury should their Motion be denied, particularly if it is denied only in part as Plaintiffs suggest. Defendants instead complain they would have to engage in discovery. When considered in totality, the *Brady* factors weigh heavily in favor of denying the Motion and permitting this matter to proceed with discovery.

### I. Defendants have failed entirely to show they are likely to succeed on the merits of the appeal.

Defendants are unlikely to succeed on appeal and have not even attempted to engage with this first, and most important, *Brady* factor. Just because the Eighth Circuit granted Defendants' 23(f) petition, it does not mean Defendants are likely to succeed on the merits. If anything, this Court has already weighed the merits of Plaintiffs' class certification arguments and found that it is Plaintiffs who should succeed. Defendants' failure to make any attempt to show they are likely to succeed on the merits should all but decide this motion.[1] As noted, Plaintiffs do not oppose

[1] For a comprehensive discussion of why Plaintiffs will succeed on the merits at appeal, the Plaintiffs incorporate by reference the arguments raised in their opposition to Defendants' motion to stay the preliminary injunction hearing. (Doc. 123).

staying some deadlines in this case in the interest of judicial economy, but do not think that the stay should pause all discovery.[2]

On appeal, Defendants argue this Court erred in finding commonality and typicality for the Restoration Class.[3] In its Amended Order Granting Class Certification (Doc. 121), this Court considered and rejected these arguments from Defendants. In finding commonality, the Court properly relied on *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), to reason that despite any factual differences in Restoration Class members "[t]heir common circumstances are far more relevant to the Constitutional Due Process analysis than any differences among class members." (Doc. 121 at 8). With respect to typicality of the Restoration Class, this Court relied on *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561–62 (8th Cir. 1982) to find that all named Plaintiffs representing the Restoration Class "have plausibly demonstrated that the injustices they have experienced, like the injury inflicted and to-be-inflicted on other class members, stem directly from Defendants' policies, practices, and customs regarding the provision of competency services," and further, all putative class members "share a common injury: experiencing an unreasonable delay in the provision of competency services by DMH." (Doc. 121 at 10).

Therefore, as this Court has already decided, existing case law heavily favors Plaintiffs' position and Plaintiffs have adequately established all elements necessary for the certification of the Restoration Class. And, because the interlocutory appeal will not be dispositive—even if Defendants were to succeed on all fronts—a complete stay of proceedings is not justified.

---

[2] Plaintiffs would also be prepared and willing to disclose expert witnesses, should this Court determine that staying portions of the case are appropriate but considers allowing discovery to continue in part or fully.

[3] Defendants' appeal also purports to raise questions regarding the Evaluation Class, which has been de-certified.

## II. Defendants face no irreparable injury if the action proceeds.

Defendants face no threat of irreparable injury should proceedings continue; this is particularly true if proceedings are limited to discovery but is true in other respects as well. In their claims to the contrary, Defendants are oblivious to the harms Plaintiffs face each day. Throughout Defendants' Motion, they object strenuously to completing standard discovery tasks common to civil litigation. Yet, Defendants fail to identify any discrete aspect of discovery that would present them with an undue burden. Instead, they simply state, "DMH staff would need to devote substantial time, attention, and financial resources to responding to written discovery requests, preparing to be deposed, and otherwise assisting counsel in defending this case." (Doc. 153 at 4).

Engaging in standard discovery processes does not constitute irreparable injury warranting a complete stay of proceedings. *M.B. v. Corsi*, No. 2:17-CV-04102-NKL, 2018 WL 5504178, at *4 (W.D. Mo. Oct. 29, 2018) (finding defendants "failed to establish irreparable harm" in arguing that "[m]uch of the enormous amount of work that must be done to complete discovery and get ready for trial may be wasted if the Eighth Circuit decides to decertify or narrow the proposed class."); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, No. CV 18-871 (MJD/HB), 2020 WL 6566467, at *3 (D. Minn. Nov. 9, 2020) (holding similarly).

Importantly, the discovery at issue is relevant to Plaintiffs' claims regardless of whether the claims proceed on behalf of a certified class.[4] Courts regularly allow discovery to proceed when the outcome of an appeal would not affect whether such discovery would occur in the underlying litigation. *McAllister v. St. Louis Rams, LLC*, No. 4:16-CV-172 SNLJ, 2018 WL 2180247, at *1 (E.D. Mo. Apr. 9, 2018) (rejecting defendant's argument that discovery would

[4] Defendants have not shown that the scope of discovery would necessarily change even if the class were decertified, and therefore, their appeal to a potential waste of judicial resources cannot succeed. *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, No. CV 18-871 (MJD/HB), 2020 WL 6566467, *3 (D. Minn. Nov. 9, 2020) ("Plaintiffs have an incentive to continue this case individually and to pursue robust discovery even without a certified class.").

result in harm and waste and reasoning "[a]ny discovery conducted between now and June 18 is unlikely to have been 'useless,' even in the event that the Eighth Circuit takes the appeal and reverses class certification, because such discovery would still be relevant to individual claims"); *In re Wholesale Grocery Prods. Antitrust Litig.*, 2016 WL 6246758, at *2 ("Defendants have also failed to demonstrate that they will be irreparably injured unless a stay is granted. Although Defendants contend that they will be substantially harmed by engaging in expensive merits expert reports, expert discovery is unavoidable regardless of whether this litigation proceeds as a class action or as individual lawsuits.").

Continuing with discovery, in particular, will aid the parties in ascertaining functional methods of both short-term relief and long-term systemic changes. As it currently stands, DMH's evaluation and competency restoration system is non-functional. Vulnerable individuals, including Plaintiffs and class members, wallow in Missouri's jails indefinitely without access to meaningful or effective mental health care. Defendants have no means to triage those needing immediate intervention, and none of Defendants' plans to implement effective systemic changes have made any meaningful progress. In short: this litigation will continue even if Defendants are granted full relief on appeal. Therefore, it remains in the interest of both parties that discovery continues irrespective of the appeal.

## III. If the action is stayed in its entirety, Plaintiffs and class members will face continuous substantial injuries.

Plaintiffs and class members face extreme and irreparable harm every day. If a complete stay is granted, those harms would continue indefinitely. Any danger to health generally warrants a presumption of irreparable harm. *See e.g.*, *Kai v. Ross*, 336 F.3d 650, 656 (8th Cir. 2003). And "[t]he loss of [constitutional rights], for even minimal periods of time, unquestionably constitutes irreparable injury." *Ellrod v. Burns*, 427 U.S. 347, 373 (1976). Because of Defendants' failures,

Plaintiffs and class members are not only being deprived of their constitutional rights, but are also in danger of deteriorating mental and physical health.

In June of 2026, Plaintiffs' expert, Dr. Lauren Kois, toured four jails across Missouri and observed Plaintiffs and class members enduring conditions damaging to their physical and mental health. Ex. 1, Declaration of Dr. Kois, ¶¶ 2–3. Examples from her declaration are included below.

***Jackson County Detention Center:*** This Center's policy requires individuals perceived as displaying "disruptive behavior" to be assigned to disciplinary segregation based on the underlying incident, not the individual's clinical need, having the devastating effect of "rout[ing] the most symptomatic individuals into the most restrictive housing where symptoms and behaviors typically exacerbate rather than resolve." *Id.* ¶ 20. Some symptomatic individuals such as G.D. remain in general population, raising their risk of decompensation into psychotic illness. *Id*. ¶¶ 17, 22.

***Buchanan County Jail:*** This jail lacks a mental health unit, requiring those experiencing psychosis to be housed in the booking area; and they receive mental health treatment only when a mobile unit visits, typically once a month. *Id.* ¶¶ 25, 28. The jail staff understand that class members are very sick but are unsure how to respond given their limited resources. Named plaintiff K.M. was kept in isolation, shackled by multiple officers for simple tasks like showering, and repeatedly endured uses of force, one requiring a visit to an emergency room *Id.* ¶¶ 32–37, 45–47.

***St. Louis City Justice Center:*** Here, individuals with heavy psychiatric medication regimens are in their cells for over 23.5 hours a day, with no access to commissary or tablets to occupy their time. *Id.* ¶ 49. Dr. Kois spoke with plaintiff C.T., who has been pepper-sprayed on at least four occasions when he was actively symptomatic. *Id.* ¶ 54. Dr. Kois opines that deploying chemical restraint on psychotic individuals is not a clinical response, yet nothing in C.T.'s records indicates that the Center has taken *any* clinical response to C.T.'s symptoms. *Id.* ¶ 58.

***St. Louis County Justice Center:*** Plaintiff D.W. had been forced into a suicide smock for one month—permitted to wear nothing underneath—at the time of Dr. Kois's visit. *Id.* ¶ 70. He was extremely symptomatic—offering no spontaneous speech, reporting hearing voices, having a flat affect and blank stare, and failing to maintain personal hygiene. *Id.* ¶ 71. Despite this, D.W. was found to be too symptomatic to receive jail-based competency restoration, but not symptomatic enough for involuntary medication, left to languish with completely inadequate clinical care. *Id.* ¶ 72. As Dr. Kois opined, people in that condition require "psychiatric intervention and frequent review to track clinical response, not reduced interpersonal contact and restricted privileges. He requires a setting in which hygiene and safety are maintained for him." *Id.* ¶ 77.

Furthermore, between 2023 and 2026, at least five people awaiting mental health care from DMH have died in jail while awaiting those services. Ex. 2, *News Reports on Jail Deaths of IST Individuals*. The deaths of these five people were ascertained through public media sources, though it is possible more deaths have gone unreported. If the waitlist continues to go unmanaged, many people will become untreatably ill, and others will lose their lives awaiting care. Such a high degree of continuing harm weighs heavily in favor of denying Defendants' Motion.

## IV. Imposing a complete stay will harm the public interest.

The final factor for this Court to consider in deciding whether to grant Defendants' request for a stay of all proceedings is the impact of such a stay on the public's interest. *Brady*, 640 F.3d at 789.

The general public has a clear interest in the proper functioning of two important public institutions—the state's carceral system (as well as the due process rights of those awaiting trial) and the state's government agency whose Mission is: "To improve the mental health of those we serve with a commitment to excellence in all we do." *See* Philosophy, MO. DEP'T OF MENTAL HEALTH, https://dmh.mo.gov/smmhc/philosophy (last accessed Sept. 15, 2026).

Public interest weighs against a stay, especially a stay that includes all discovery, when the expeditious resolution of class litigation helps to maintain public confidence in such institutions. In *Plymouth County Retirement System*, the court denied a stay pending a class appeal by finding that private securities fraud actions help maintain public confidence in the marketplace and, therefore, the public would benefit from the efficient resolution of such a case. 2020 WL 6566467, at *4. Surely, if the public's confidence in private securities is valuable enough to avoid a stay of litigation, the public interest in knowing that the *public's* state department tasked with taking care of the *public's* mental wellbeing is worth allowing the litigants in this case to continue exploring alleged problems with that department's operations and potential solutions to those problems.

Moreover, as this Court has already seen, there are hundreds of people on DMH's waitlists awaiting competency services. Every single one of those people have family members and friends who are subsequently impacted by the systemic failings of DMH in providing them with needed evaluation and treatment. Meaning, the number of people directly impacted by DMH's failures is likely in the thousands.

## CONCLUSION

For far too long, Missourians awaiting trial on criminal charges have been decompensating within Missouri's jails for lack of access to constitutionally required competency restoration treatment. Regardless of the outcome of Defendants' 23(f) appeal at the Eighth Circuit, Defendants' Motion should be denied to allow for discovery related to the operations of DMH's Waitlist and restoration programs.

Wherefore, Plaintiffs request this Court deny Defendants' request for a stay in so far as it pertains to discovery.

Dated: September 15, 2026

Respectfully submitted,

By: /s/ Jason Orr
Gillian R. Wilcox, #61278MO
Jason Orr, #56607MO
American Civil Liberties Union
of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
Facsimile: (314) 652-3112
gwilcox@alcu-mo.org
jorr@aclu-mo.org

Kristin M. Mulvey, #76060MO
Jonathan D. Schmid, #74360MO
American Civil Liberties Union
of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
Facsimile: (314) 652-3112
kmulvey@aclu-mo.org
jschmid@aclu-mo.org

/s/ Ebony McKeever
Maureen Hanlon,#70990MO
Ebony McKeever, #77050MO
ArchCity Defenders
5939 Goodfellow Blvd.
Saint Louis, MO 63147
855-724-2489 ext. 1008
314-925-1307 (fax)
mhanlon@archcitydefenders.org
emckeever@archcitydefenders.org

/s/ Brent Dulle
Brent Dulle, #59705MO
Kevin Cowling, #72755MO
HUSCH BLACKWELL LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
Phone: (314) 480-1500
Fax: (314) 480-1505
Brent.Dulle@huschblackwell.com
Kevin.Cowling@huschblackwell.com

/s/ Eric Foley
Eric Foley, LA Bar No. 34199
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
Ph: 504-620-2259
Fax: 504-208-3133
Eric.Foley@macarthurjustice.org

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically and served by operation of the CM/ECF system on all counsel of record on September 15, 2026.

/s/ Jason Orr